# CASES

# SUPREME JUDICIAL COURT

IN THE

COUNTY OF LINCOLN, MAY TERM, 1840.

---

## JOSEPH PILLSBURY *vs.* SAMUEL PILLSBURY.

*If one undertakes to procure a deed of land for another, who pays the consideration therefor in accordance with a previous agreement, but fraudulently takes the conveyance to himself, such agent may be compelled by bill in equity to convey the land to him who made the contract and paid the consideration.*

*The creditor may be a witness for the plaintiff in a cause, when a recovery will increase the property of his debtor.*

THIS was a bill in equity, and was originally argued at the *May Term* in this county, 1838, on bill, answer and proof. An opinion was delivered orally at the same term, and on the then existing state of facts, it was considered that the deed of the land was fraudulently taken by the defendant to himself, when it should have been taken to the plaintiff, and a decree was entered that the defendant should convey the premises to the plaintiff. At the *June Term* following, in *Kennebec*, the defendant moved for a rehearing, because he had been prevented from exhibiting the whole of his testimony, and because he had discovered new evidence to show, that some testimony introduced at the trial was untrue. Notice was ordered returnable at the *July Term*, in *Waldo*, when leave was given to the plaintiff to amend his bill, and to the defendant to have the case opened for a new hearing. At the *May*

*Term*, in this county, 1839, the case was continued to be argued in writing on the bill, answer and proof.

The bill as amended, alleges, that the plaintiff and *John Pills-bury*, brother of both the plaintiff and defendant, about *July*, 1833, contracted with *Silas Penniman* and wife, for the purchase of a piece of land in *Thomaston;* that *Penniman* and *John* and *Joseph Pillsbury* were to meet by agreement at the house of *T. Wellman, Esq.* to take the deed on the 30th of *July*, 1833; that on that day, *Penniman* called on them for the purpose of making the conveyance, and in consequence of their engagements, *John* and *Joseph* procured their brother *Samuel*, the defendant, to go for them; that *Samuel* went for them, but fraudulently represented to *Penniman* and *Wellman*, that the deed was to be made to him, and procured it so to be done; that on the same day the deed was delivered to *John Pillsbury*, and he and the plaintiff, believing the deed to have been made to them as had been agreed, did not examine it, and paid the consideration, $400,00, to *Penniman;* that the deed was kept by *John* until the following spring when he went to sea; that during his absence, *Samuel*, by false and fraudulent representations that it was her husband's desire, induced the wife of *John* to deliver the deed to him, *Samuel;* that *Samuel* caused the deed to be recorded, *April* 12, 1834, and now claims the land; and that the plaintiff, having no knowledge of the fraudulent transactions of *Samuel*, purchased of his brother, *John*, who had been his partner in business, his interest in the land, who conveyed the same to the plaintiff, by deed of quitclaim, *August* 14, 1834.

The answer of the defendant avers, that he is entirely ignorant of any contract for the land between *Joseph* and *John Pillsbury* and *Penniman;* that he in his own right and for himself contracted with *Penniman* for the land, and never was employed by *John* or *Joseph* to purchase the land, nor undertook to act for them; that he was at work for *Penniman*, when he made the purchase, and never heard of any agreement to meet at *Wellman's;* that he did go to *Wellman's* with *Penniman*, but not at the request of *John* or *Joseph*, to have a deed made of the land to him; that the deed was there made and delivered to him, and was acknowledged, and has been recorded; that *Joseph* and *John* did not furnish him with four hundred dollars, or any other sum, to appropriate to the pur-

chase of this land, but that in fact he had previously from time to time loaned to *John* and *Joseph*, who were co-partners, several sums of money amounting at this time to not less than three hundred and fifty dollars ; that on the day of the purchase he called on *Joseph* for repayment, and received of him one hundred and twenty-five dollars in part payment, and called on *John*, and received of him in part payment two hundred dollars, for both which sums he was to account ; that he had on hand of his own seventy-five dollars, and with these sums paid *Penniman* four hundred dollars for the land on his own account, without any understanding or agreement that the land was purchased for the use or benefit of *Joseph* or *John* ; that he being frequently in the store of *Joseph* and *John*, " and having no family of his own, by accident left the deed on the writing desk of said *Joseph* and *John* ; that when said *Samuel* on the same evening called to take the deed, he was told by said *Joseph* that *John*, he being then absent from the store, had carried it home ; said *Samuel* having no immediate occasion for it did not then go for it, but supposing it would be safe, suffered it to remain until he wished to have it recorded, when he called at the house of said *John*, and took said deed, and sent it to the register, and had it recorded, as he lawfully might do." He states, " that he informed the said *John* and verily believes the said *Joseph* had full knowledge that said land was conveyed to said *Samuel* in his own right, and that he well knew that said *John* had no interest in said premises at the time when he says he took a deed of release from him, the said *John*, and that he was no way deceived in that respect."

The plaintiff filed the general replication, and testimony was taken by both parties. But a small portion of the testimony was taken by the counsel arguing the case. The facts necessary for the proper understanding of the matter in controversy, will be found in the opinion of the Court.

*Ruggles* and *J. S. Abbott* argued for the plaintiff, and cited *Seaver* v. *Bradley*, 6 *Greenl.* 60; *Ulmer* v. *Hills*, 8 *Greenl.* 326 ; 2 *Story's Eq.* 744 ; 2 *Atk.* 235 ; 1 *Meri.* 244 ; 2 *Rose*, 271 ; 2 *Mad.* 443 ; *Story's Eq. Pl.* 655.

*F. Allen* argued for the defendant.

The opinion of the Court was drawn up by

SHEPLEY J. — A rehearing was granted in this case upon the petition of the defendant, it appearing that he had been prevented from exhibiting the whole of his testimony. As now exhibited, the testimony is overloaded and incumbered with a mass which is illegal and irrelative; and if those taking testimony in equity cases cannot refrain from such a course, it will become necessary to change the rule and require the testimony to be taken by interrogatories in their absence. It would occasion a prolonged discussion, and one of very little value, to separate the legal from the illegal testimony, and give the reasons for it. The legal testimony only will be regarded.

The allegations of the bill are fully proved by the testimony of *Penniman* and of *John Pillsbury* and his wife. And if their testimony be competent and credible, the defendant must have obtained the title by a deliberate fraud, and cannot retain it. However strange it may appear, that he should have caused the deed to be fraudulently made to himself, knowing that it would be exhibited to *John* and *Joseph* before payment was made; yet if this testimony is to be relied upon, he must from his knowledge of their careless habits, or their confidence in *Wellman*, or from a combination of these and other causes, have expected, that he should be successful, or that if not, the attempt would be attended by little danger.

Is the credit of *Penniman* materially impaired by the opposing testimony? *Daniel Cowing* says in substance, that he was present when the money was paid, and that when *John* had counted out $200, he handed it to *Samuel* to count over, and which handed it to *Penniman* he cannot say, and he went directly out; that *John* took the deed in his hand and said he did not know, but that the deed ought to have been made in his name, as he had paid most of the money; that the land was not worth over $100, and *Samuel* had given too much for it; and that when a store was about to be moved on to the land, *Samuel* forbid *Joseph* to put it on, and *John* said the land belonged to *Samuel*, and that he let or loaned him the money to pay for it. There is nothing in these statements in direct conflict with the testimony of *Penniman*, and yet it would be expected, that he should recollect something of

them, if they did take place. Are they in themselves probable and credible, being in accordance with what would have been expected from the allegations of either party respecting the transaction? They are introduced because they are not to be reconciled with the plaintiff's account of it. And if *Samuel* was the real purchaser, and was receiving a debt or borrowing money of *John* and *Joseph*, why should *John* take and examine the deed, and say that it ought to be in his name because he had paid most of the money, and do this when it is not pretended, that he paid more than half the money? And why should *John* hesitate about paying the money, and say it was not worth more than a $100, if he had no interest in it? *Cowing* does not profess to have been present during the whole of the transaction, and these considerations, combined with the time and manner of first introducing the testimony, prevent its affecting materially the credit of *Penniman*. *Rice Rowell* states the opinion expressed by *Penniman* respecting the title to the land, but it does not appear that he made any contradictory statement respecting the facts. *Oliver White* says he told him, that he had deeded the lot to *Samuel*, and he supposed the *Pillsburys* had bought it together. *James Crockett* says he understood him to say that he had sold the land to *Samuel*. Having made the deed to *Samuel*, he might speak of it as sold to him, or he might have said as he did to *White*, that he deeded it, instead of sold it, and *Crockett* not remember the word used. This is the substance of their testimony; and it is little, if at all inconsistent with *Penniman's* own account of the business, and the combined effect of all the opposing testimony does not materially injure his credit.

Is *John Pillsbury* a competent witness? Whatever interest he acquired in the property by the assignment has been released. The partnership formerly existing between him and *Joseph* was dissolved several years ago; and *John* released his interest in this land and the other partnership property to *Joseph*, who bound himself to pay all the debts. One remains unpaid. *John* is equally liable to pay that debt, whether *Joseph* prevails in this case or not. *Joseph* may be more able to pay it, if he succeeds, and more able to pay *John* if he is obliged to pay it; but that does not prove such an interest in *John* as to exclude him. The creditor may be a

witness in a cause when a recovery will increase the property of his debtor. The land cannot be levied upon as the estate of the partners, for they never had any legal title to it. The interest is too remote and contingent to exclude him.

The defendant introduces the testimony of *Dunning*, *Cowing*, *Berry* and *Dudley*, to impair or destroy his credit. The substance of their testimony may be briefly stated. *Dunning* says, that *John* told him that *Samuel* owned the land, that he let him have the money to pay for it, and was to get it back by means of a debt, which the firm owed him. *Cowing's* has been already stated. *Berry* says, that *John* admitted, that *Samuel* paid $75 towards the land, and that he came to him at his vessel to get some money to pay for it, and he let him have it; and he speaks of the same conversation related by *Dunning*. *Dudley* says, that he said *Joseph* should not complain of *Samuel* for forbidding him to dig a cellar on it for he " calculated the land belonged to *Samuel*," and yet he says, " he did not say whether the land belonged to *Samuel* or not." The testimony of these witnesses might be considered as substantially overthrowing the testimony of *John*, if their own credibility was not impaired by their manner of testifying as it is exhibited in their depositions. The statement respecting *Samuel's* going to the vessel after the money, is inconsistent with any account of what actually took place. There are other facts and circumstances in the case clearly proved, sufficient to corroborate the testimony of *John* and render it credible.

The bill charges that *Samuel* obtained the deed from the wife of *John*, in his absence, by falsely and fraudulently representing to her, that her husband wished him to get it, and have it recorded. To such a charge he was specially called upon by every consideration affecting his character, to give a definite and direct answer.

The only answer to this, except the general denial of all matters is, that by accident he left the deed on the desk, was informed that *John* had carried it home, and supposing it would be safe he suffered it to remain till he wished to record it, and then called at the house of *John* and took it. The probability, that he should not ask for the deed under such circumstances for several months, as well as the rest of the statement, is not great; and the allegations of the bill on this point are not met by the answer; and

are clearly proved by the testimony of the wife. Her testimony is not attempted to be impaired ; and if true, as it must be taken to be, it strongly corroborates and fortifies that of her husband ; for it is inconceivable, that one should so conduct, who had a fair and good title to both the deed and the land conveyed by it ; while it might be expected from him, if *John's* testimony be true. Another fact of importance is, that *Joseph* has always remained in possession, and has taken the rents without any claim upon him, or interference, by *Samuel,* except the forbidding to dig the cellar. The want of proof of any debt due from the firm to *Samuel,* and of any receipt or note given for the money, alleged to have been obtained by him, impairs one's confidence in the statement, that it was so received, and tends to confirm the statements made by *John* and *Penniman ;* and their testimony, taken in connexion with these circumstances, is sufficient to prove the material allegations of the bill. And if *John's* testimony be laid out of the case, there is sufficient remaining upon equitable principles to destroy all confidence in the answer.

*The former decree is affirmed with costs.*